UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAMELA KRISTAL FIGUEROA,

                        Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

<u>DECISION &amp; ORDER</u>

19-CV-6472MWP

## **<u>PRELIMINARY STATEMENT</u>**

Plaintiff Pamela Kristal Figueroa ("Figueroa") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 11).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

I.    **Standard of Review**[1]

      This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

---

[1] Figueroa was born on June 11, 1998, and alleges her disability onset date as October 26, 2015, which is the same date Figueroa's mother filed the SSI application on her behalf.  (Docket # 7 at 73-74).  Figueroa was thus under the age of 18 on the date of application and alleged onset date, but had attained the age of 18 prior to the ALJ's decision on September 27, 2018.  (*Id.* at 15, 29, 74).  Accordingly, the ALJ applied the rules applicable to child disability claims for the period prior to Figueroa's eighteenth birthday, and the rules applicable to adult disability claims for the period since that date.  *See* 20 C.F.R. § 416.924(f) ("[i]f you attain age 18 after you file your disability application but before we make a determination or decision[:] [f]or the period during which you are under age 18, [the Commissioner] will use the rules in [section 416.924][;] [f]or the period starting with the day you attain age 18, [the Commissioner] will use the disability rules [the Commissioner] use[s] for adults who file new claims, in [section] 416.920"); *see also Hyland v. Astrue*, 2008 WL 3286304, *2 (W.D.N.Y. 2008) ("[b]ecause [p]laintiff was under 18 years old when he initially filed an application for SSI, but over 18 years old when the ALJ released a decision on his claim, the ALJ applied the disability rules for children to the period during which [p]laintiff was under the age of 18, and the adult disability rules to the period since the day the claimant attained age 18").  Neither party disputes that this was the appropriate standard by which to assess Figueroa's SSI application.

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A. **Child Disability**

A child is disabled for the purpose of SSI if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i). When assessing whether a claimant is disabled, the ALJ must employ a three-step sequential analysis.  *See* 20 C.F.R. § 416.924; *see also Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010).  The three steps are:

(1)     whether the child is engaged in substantial gainful activity;

(2)     if not, whether the child has a medically determinable impairment or combination of impairments that is severe such that it causes more than minimal functional limitations; and

(3)     if so, whether the child's impairments or combination of impairments meet, medically equal, or functionally equal a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the regulations (the "Listings").

*See* 20 C.F.R. §§ 416.924(b)-(d).

In determining whether a child's impairments or combination of impairments meet, medically equal, or functionally equal one of the Listings, the ALJ must evaluate the child's functioning across the following six domains of functioning:

(1)     acquiring and using information;

(2)     attending and completing tasks;

(3)     interacting and relating with others;

(4)     moving about and manipulating objects;

(5)     caring for oneself; and

(6)     health and physical well-being.

*See id.* at §§ 416.926a(b)(1)(i)-(vi).  To be functionally equal, the impairment must result in a finding of "marked" limitations in two domains of functioning or a finding of "extreme" limitations in at least one domain of functioning.  *See id.* at § 416.926a(a).

A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  *Id.* at § 416.926a(e)(2)(i).  An "extreme" limitation is "more than marked" and one which "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities."  *Id.* at § 416.926a(e)(3)(i).  An extreme limitation "is the rating [the Commissioner] give[s] to the worst limitations[,]" but it "does not necessarily mean a total lack or loss of ability to function."  *Id.*

B.     **Adult Disability**

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

> (1)     whether the claimant is currently engaged in substantial gainful activity;
>
> (2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)     if so, whether any of the claimant's severe impairments meets or equals one of the Listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.    **The ALJ's Decision**

In his decision, the ALJ initially followed the required three-step analysis for evaluating childhood disability claims for the period prior to Figueroa's eighteenth birthday. (Tr. 19-25).[2]  Specifically, under step one of the process, the ALJ found that Figueroa had not engaged in substantial gainful activity since October 26, 2015 – the date of application.  (Tr. 19). At step two, the ALJ concluded that Figueroa had the severe impairment of "global femoracetabular impingement with progressive osteoarthritis."  (Tr. 20).  At step three, the ALJ determined that Figueroa did not have an impairment (or combination of impairments) that met or medically equaled one of the Listings.  (*Id.*).

In addition, the ALJ concluded that Figueroa did not have an impairment or combination of impairments that functionally equaled one of the Listings.  (Tr. 20-21).  In reaching this conclusion, the ALJ evaluated Figueroa's impairments across the six domains of functioning.  (Tr. 21-25).  Specifically, the ALJ found that Figueroa suffered from less than marked limitations in the domains of moving about and manipulating objects, and health and physical well-being.  (Tr. 23-25).  The ALJ also found that Figueroa suffered from no limitations in the remaining four functional domains.  (Tr. 21-25).  Accordingly, the ALJ found that Figueroa was not disabled prior to turning 18 years old.  (Tr. 25).

Next, the ALJ applied the required five-step analysis for adult disability claims for the period since Figueroa's eighteenth birthday.  (Tr. 19-20, 25-29).  Specifically, as with step one of the childhood disability analysis, the ALJ found that Figueroa had not engaged in substantial gainful activity since October 26, 2015.  (Tr. 19).  At step two, the ALJ concluded that Figueroa had not developed any new impairments since attaining age 18, but continued to

---

[2]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

have a severe impairment or combination of impairments, i.e., global femoracetabular impingement with progressive osteoarthritis. (Tr. 20, 25). The ALJ also determined that Figueroa suffered from mental impairments of depressive disorder and panic disorder, but that those impairments were nonsevere. (Tr. 25). At step three, the ALJ determined that Figueroa did not have an impairment (or combination of impairments) that met or medically equaled one of the Listings. (Tr. 26). The ALJ then concluded that Figueroa retained the RFC to perform a full range of sedentary work. (Tr. 26-28). At steps four and five, the ALJ found that Figueroa was unable to perform her past relevant work and that, based on Figueroa's age, education, work experience, and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 201.28. (Tr. 28-29). Accordingly, the ALJ concluded that Figueroa was not disabled. (Tr. 29).

### III.   Figueroa's Contentions

Figueroa contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 9). First, Figueroa argues that the ALJ failed to explain his decision to "implicit[ly] reject[]" a portion of the opinion of consultative examiner Harbinder Toor ("Toor"), MD, that Figueroa had "moderate limitations in sitting a long time," despite affording Toor's opinion "great weight." (Docket # 9-1 at 13-15). Second, Figueroa maintains that the ALJ provided an insufficient rationale for his step three finding that Figueroa's hip impairment did not meet the requirements for Listing 1.02A (major dysfunction of a joint). (*Id.* at 15-22). Third, Figueroa asserts that the ALJ erroneously failed to consider whether she met the requirements for Listing 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate

effectively).  (*Id.* at 22-24).[3]  Finally, Figueroa argues that the ALJ's credibility analysis was flawed.  (*Id.* at 24-26).

## IV.    Analysis

### A.    The ALJ's Step Three Determination

I turn first to Figueroa's second and third contentions, both of which relate to the ALJ's step three finding, and thus relate to a determination made earlier in the sequential analysis than the determination to which her first and fourth arguments relate.  *See*, *e.g.*, *McIntosh v. Berryhill*, 2018 WL 4376417, *17 (S.D.N.Y.) ("[r]ather than address [p]laintiff's arguments in the order in which they are raised in his brief, this [c]ourt will . . . address[] [p]laintiff's final argument . . . given that it relates to an earlier step of the five-step sequential evaluation than do [p]laintiff's other arguments"), *report and recommendation adopted by*, 2018 WL 4374001 (S.D.N.Y. 2018).

Figueroa maintains that at step three the ALJ erroneously evaluated whether she qualified as disabled under Listing 1.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1, a listed impairment concerning the "major dysfunction of a joint."  (Docket # 9-1 at 15-22).  Figueroa argues that the ALJ's analysis was "pithy" and insufficiently explained his reasoning that Figueroa did meet Listing 1.02A.  (*Id.*).  Moreover, Figueroa points to record evidence purportedly demonstrating that she meets each requirement of that listing.  (*Id.*).

---

[3]  Listings 1.02A and 1.03 are both found in "Part A" of the Listings, which contains "[c]riteria [of listed impairments] applicable to individuals age 18 and over *and* to children under age 18 where criteria are appropriate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis supplied).  "Part B" of the Listings, on the other hand, contains "[m]edical criteria for the evaluation of impairments of children under age 18 (where criteria in part A do not give appropriate consideration to the particular disease process in childhood)."  *Id.*  Here, even though Figueroa was under 18 during a portion of the relevant period, she neither contends that the criteria for Listings 1.02A and 1.03 were inappropriate or inapplicable for her claim, nor that the ALJ erred by failing to consider a listed impairment in "Part B."  Therefore, this Court will consider Figueroa's arguments as they relate to the ALJ's consideration of Listings 1.02A and 1.03.

The Commissioner responds that the ALJ's determination at step three is supported by substantial evidence because Figueroa "has not established that she could not ambulate effectively," which is a requirement for Listing 1.02A.  (Docket # 11-1 at 19).  Based on a careful review of the record evidence, I agree with the Commissioner.

"At step [three] of the sequential evaluation process for determining disability in adult and child claims, [the Commissioner] make[s] a medical assessment to determine whether an individual's impairment(s) meets a listing in [20 C.F.R. Part 404, Subpart P, Appendix 1]." Social Security Ruling ("SSR") 17-2P, 2017 WL 3928306, *2 (Mar. 27, 2017); *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.924(d).  "[A] claimant is entitled to a conclusive presumption that [she] is disabled if [her] impairment meets or is medically equivalent to an impairment listed in [the Listings]."  *Carter v. Colvin*, 2016 WL 3360559, *11 (E.D.N.Y. 2016).  In order to meet a listed impairment, a claimant "must show that [her] impairment meets or equals *all* specified criteria of a listing[;] . . . '[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.'"  *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)). The claimant bears the burden to prove that his or her impairments meet or equal a listed impairment.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006).

"Where the claimant's symptoms, as described in the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings."  *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002).  If the ALJ fails to do so, however, "the court may 'look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'"  *Hall v. Berryhill*, 2018 WL 1071508, *3 (W.D.N.Y. 2018) (quoting *Berry*, 675 F.2d at 469); *accord* SSR 17-2P, 2017 WL 3928306 at *4 (an ALJ is "not

9

required to articulate specific evidence supporting his or her finding that the individual(s) does

not medically equal a listed impairment[;] [g]enerally, a statement that the individual(s) does not

medically equal a listed impairment constitutes sufficient articulation for this finding").

Listing 1.02A concerns a "major dysfunction of a joint (due to any cause)" and is

characterized by "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or

other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable

imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)[,] [w]ith

. . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle),

resulting in inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. Pt. 404, Subpt.

P, App. 1, § 1.02A.[4]

The Listings specifically define "inability to ambulate effectively" as "an extreme

limitation of the ability to walk; i.e. an impairment(s) that interferes very seriously with the

individual's ability to independently initiate, sustain, or complete activities."  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.00B2b(1).  "Ineffective ambulation is defined generally as having

insufficient lower extremity functioning . . . to permit independent ambulation without the use of

a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id.*

Moreover:

> To ambulate effectively, individuals must be capable of sustaining
> a reasonable walking pace over a sufficient distance to be able to
> carry out activities of daily living.  They must have the ability to
> travel without companion assistance to and from a place of
> employment or school.  Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk

---

[4]  The Listings have been amended several times since the ALJ's September 27, 2018 decision.  This decision cites to the Listings effective at the time of the ALJ's decision.  *See Williams v. Berryhill*, 2018 WL 1663260, *3 n.3 (W.D.N.Y. 2018) (stating that the "relevant version" of the applicable listing was the version effective at the time of the ALJ's decision).

> without the use of a walker, two crutches or two canes, the
> inability to walk a block at a reasonable pace on rough or uneven
> surfaces, the inability to use standard public transportation, the
> inability to carry out routine ambulatory activities, such as
> shopping and banking, and the inability to climb a few steps at a
> reasonable pace with the use of a single hand rail.  The ability to
> walk independently about one's home without the use of assistance
> devices does not, in and of itself, constitute effective ambulation.

*Id.* at § 1.00B2b(2).

In his decision, the ALJ explicitly considered Listing 1.02, recited the elements required to meet that listing, and concluded that "[n]one of the medical evidence established findings or symptoms severe enough to qualify under [L]isting 1.02."  (Tr. 26).  The ALJ cited no specific evidence in support of this one-sentence explanation.

Although the ALJ's analysis at step three clearly could have been more thorough, remand is not required because other portions of the ALJ's decision and the medical record establish that Figueroa cannot meet "all" of the specified criteria of Listing 1.02A.  *See Carter v. Colvin*, 2016 WL 3360559 at *11; *Hall v. Berryhill*, 2018 WL 1071508 at *3.  In particular, the record does not establish that Figueroa's severe hip impairment resulted in an "inability to ambulate effectively," as that term is defined in the Listings.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2b.

In arguing that she cannot effectively ambulate, Figueroa points to several findings and statements in the record.  First, she relies on Toor's consultative examination findings that she had abnormal gait, limped to her right side, and had long-standing hip pain that affected her balance.  (Docket # 9-1 at 21 (referencing Tr. 364-68)).  Second, she references several treatment notes spanning from 2015 to 2018 reflecting complaints of hip and knee pain and abnormal gait and limping.  (*Id.* (citing Tr. 403 (October 2015 treatment note: "[s]he is limping[;] . . . [t]here is mild Trendelenburg gait on the right"); Tr. 250 (December 2015

11

treatment note: "[t]here is a smooth coordinated gait that is heel to toe[;] [t]here is a mild antalgic component[;] [a]nd a lurch"); Tr. 252 (February 2016 treatment note: "[s]he is able to ambulate but is limping[;] . . . [t]here is a Trendelenburg gait on the right"); Tr. 438 (May 2018 treatment note: "[s]he has significant reduction of range of motion [in her hip], function, strength, and endurance, and she is quite disabled at this time"))).  In addition, Figueroa points to statements regarding her diminished ability to complete activities of daily living.  (*Id.* (citing Tr. 182 (report from Figueroa's mother indicating that "[Figueroa] is not able to walk long distances or run, she is in a lot of pain all the time, she also is not able to stand for [two] or more [hours] at times"); Tr. 46, 63 (Figueroa's hearing testimony that she stopped working because her "leg would start like giving out" and that she received assistance doing laundry and grocery shopping))).[5]

Yet, the record also contains significant evidence demonstrating that Figueroa, although she undoubtedly experienced "difficulty and discomfort" while walking, was not limited in her ability to ambulate to the extent required to meet Listing 1.02A.  *See Carter*, 2016 WL 3360559 at *13 ("the medical evidence demonstrates at most that plaintiff had occasional difficulty and discomfort while walking[;] [s]uch difficulty and discomfort, however, fall far short of satisfying the ineffective ambulation criterion of Listing 1.02A") (collecting cases).

For instance, as noted by the ALJ, Toor observed Figueroa's long history with hip issues, including complaints of hip pain, childhood hip surgeries, and resulting difficulties with balance and limping, but also noted that she appeared to be in no acute distress on physical examination and could walk on her heels and toes without difficulty  (Tr. 365; *see also* Tr. 227 (October 2015 physical therapy treatment note indicating that Figueroa was able to perform toe

---

[5]  I note that Figueroa's testimony that she has trouble grocery shopping is not necessarily probative of her inability to ambulate effectively.  She testified that her mother and sister "come and . . . help [her] out" and that her mother "comes with [her]" when grocery shopping.  (Tr. 63-64).  In other words, she did not testify that her trouble with shopping related to walking difficulties.

and heel walking without difficulty)).  Ultimately, Toor opined that Figueroa had "moderate to marked limitations in standing, walking, bending, lifting, and carrying" (Tr. 368), which is short of the "extreme" limitation required by the regulations.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1); *see also Vargas v. Comm'r of Soc. Sec.*, 2017 WL 2838165, *4 (N.D.N.Y. 2017) ("[i]n this case, the record does not show that [p]laintiff meets all the criteria of any of the applicable Listings[;] . . . [a]lthough [the] consultative examiner . . . opined a moderate-to-marked limitation for walking[,] . . . this still does not substantiate an inability to ambulate effectively"); *Carter*, 2016 WL 3360559 at *13 ("[p]laintiff relies on [consultative orthopedist's] observations that plaintiff exhibited difficulty walking on his heels and toes and ambulated with a limp, as well as [consultative orthopedist's] opinion that plaintiff had a 'moderate to marked limitation in . . . prolonged standing, climbing stairs,' and 'long distance ambulation'[;] . . . however, the regulatory definition of 'ineffective ambulation' is detailed and demands a showing beyond the findings in [consultative orthopedist's] report").

In addition, the record reflects that Figueroa was going to the gym and swimming in November 2015 (Tr. 235), was capable of performing various activities of daily living in May 2016, such as dressing, bathing, and grooming herself independently, cooking and preparing food independently, and doing general cleaning (Tr. 372), could consistently walk to the bus stop from her mother's house, which was less than two minutes away, and had no issues taking public transportation to work (Tr. 58, 63-64, 372).  Moreover, on April 12, 2016, registered nurse Suzanne Hilt wrote a note for Figueroa's school indicating that Figueroa would "be having surgery this summer[, and that] [i]n the meantime she w[ould] need modifications in PE class due to pain and limitations – she has *no particular restrictions*, but please allow her to self-limit and participate as tolerated."  (Tr. 612 (emphasis supplied)).  Finally, there is no indication that

13

Figueroa utilized an assistive device to ambulate.  (*See*, *e.g.*, Tr. 430 (June 2016 preoperative physical therapy treatment note indicating that Figueroa had no assistive device)).

On this record, I find that substantial evidence establishes that Figueroa could ambulate effectively.[6]  *See*, *e.g.*, *Carter*, 2016 WL 3360559 at *13 ("[e]ven if the threshold criteria of Listing 1.02A were established here, there is no evidence in the record demonstrating plaintiff's inability to ambulate effectively at any relevant time[;] [o]n the contrary, substantial evidence supports the conclusion that, despite plaintiff's severe hip and knee impairments, he retained the ability to 'ambulate effectively,' as that term is defined in the regulations[;] [a]ccordingly, the court finds that the ALJ did not err in his determination that plaintiff's impairments failed to meet or equal the requirements of Listing 1.02A"); *Richardson v. Astrue*, 2011 WL 2671557, *9-10 (S.D.N.Y.) (substantial evidence supported ALJ's finding that claimant could "ambulate effectively" where claimant "did not prove that his hip impairment impacted his ability to ambulate to the extent required by the Listings[;] . . . [claimant's] own testimony confirms that he can: (1) walk, without the use of a cane or walker, for two or three blocks before needing rest; (2) take public transportation without assistance; (3) climb stairs; and (4) perform various household chores and 'routine ambulatory activities' such as shopping for clothing or going to movies and visiting with friends[;] [consultative orthopedist's] examination also supports the finding that [claimant] can 'ambulate effectively'[;] [a]lthough [consultative

---

[6]  Based on this finding, Figueroa's argument regarding the ALJ's failure to consider Listing 1.03 also fails. (*See* Docket # 9-1 at 22-24).  To meet Listing 1.03, like Listing 1.02A, a claimant must demonstrate that he or she has an "inability to ambulate effectively."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03 ("[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset").  Given that substantial evidence in the record demonstrates that Figueroa could effectively ambulate, I find that any error the ALJ committed by not explicitly discussing Listing 1.03 is harmless.  *See*, *e.g.*, *Luder v. Berryhill*, 2017 WL 3923603, *6 (W.D.N.Y.) ("[n]otably, both § 1.02 and § 1.06 of the listing of impairments require a claimant to establish the inability to ambulate effectively to be considered disabled[;] [a]ccordingly, no error results from the ALJ's failure to analyze [p]laintiff's disability under § 1.06, as substantial evidence supports the ALJ's finding that [p]laintiff was capable of effective ambulation under § 1.00B2(b), the second criteria for disability under § 1.06 as well as § 1.02"), *report and recommendation adopted by*, 2017 WL 2895896 (W.D.N.Y. 2017).

orthopedist] observed that [claimant] walked with a 'Trendelenburg gait,' and found that his ability to ambulate was 'moderately to severely impaired,' she noted that [claimant] was not 'involved in physical therapy,' did 'not use [any] assistive devices,' and had no difficulty getting up from the chair or from the exam table to a sitting position"), *report and recommendation adopted by*, 2011 WL 3477523 (S.D.N.Y. 2011); *Paulino v. Astrue*, 2010 WL 3001752, *15-16 (S.D.N.Y. 2010) (claimant's right ankle pain did not meet or equal Listing 1.02A because "[n]othing in the record show[ed] that [claimant's] right ankle pain was so severe during the [relevant period] as to cause an [inability to effectively ambulate][;] . . . [consultative orthopedist] noted that [claimant] walked 'without any assistive device[,]' . . . limped 'slowly to avoid pressure on her right ankle' and had 'moderate' limitations in walking long distances or standing for long periods of time[;] . . . [m]oreover, [claimant] conceded that she could walk up to her fourth floor apartment (albeit slowly) and travel by bus and taxi without assistance") (alterations omitted).

Accordingly, I find that the ALJ's step three finding was not erroneous and that remand is not warranted on this basis. *See*, *e.g.*, *Beebe v. Astrue*, 2012 WL 3791258, *4 (N.D.N.Y. 2012) ("ALJ's failure to provide a specific rationale for finding that plaintiff's spinal impairment did not meet Listing 1.04A" did not require remand where "plaintiff has not established that she satisfied all the criteria symptoms of the Listing"); *Tilbe v. Astrue*, 2012 WL 2930784, *10 (N.D.N.Y. 2012) ("any error in the ALJ's failure to consider whether plaintiff's impairment met or equaled Listing 1.04 is harmless because no view of the evidence would support a finding that plaintiff's impairment met all the specified medical criteria of Listing 1.04").

B.      **The ALJ's Evaluation of Figueroa's Subjective Complaints**

I turn next to Figueroa's contention that the ALJ's decision to "minimize [her] impairments based on the type of treatment she received" was erroneous because the ALJ "gross[ly] mischaracterize[ed]" the record.  (Docket # 9-1 at 24-26).  This contention relates to the ALJ's analysis regarding the consistency of Figueroa's subjective complaints and symptoms with the record.  (*Id.* at 24 (citing Tr. 27)).  Therefore, I conclude that the salient question raised by Figueroa is whether the alleged error affected the ALJ's evaluation of Figueroa's subjective complaints.  For the following reasons, I find that remand is required for the ALJ to reevaluate Figueroa's subjective complaints.

An evaluation of subjective complaints should reflect a two-step analysis.  *See* 20 C.F.R. §§ 404.1529, 416.929.[7]  First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom.  *See id.*  Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]."  *Id.*  The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

---

[7]  The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment.  Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).  "It is the function of the ALJ,

not the court, to assess the credibility of witnesses."  *Hall v. Berryhill*, 2018 WL 6011167, *4

(W.D.N.Y. 2018) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 35 (2d Cir. 2013)).

Yet, "[i]t is clearly improper for an ALJ to discount a claimant's credibility by relying on a

mischaracterization of his or her testimony."  *Primes v. Colvin*, 2016 WL 446521, *4 (W.D.N.Y.

2016); *see also Branca v. Comm'r of Soc. Sec.*, 2013 WL 5274310, *13 (E.D.N.Y. 2013)

("[a]lthough the ALJ may choose what weight to give to plaintiff's testimony and other evidence

in the record, th[e] failure to consider certain testimony, or misconstruing such testimony,

warrants a remand in this case") (collecting cases).

   Here, the ALJ found that Figueroa's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that her statements concerning the

intensity, persistence and limiting effects of these symptoms were not entirely consistent with the

medical evidence and other evidence in the record.  (Tr. 27).  In reaching this determination, the

ALJ specifically placed significant weight on one of the factors mentioned above – the general

type of treatment Figueroa received.  (Tr. 27-28).  I find, however, that the ALJ's analysis with

respect to this factor was flawed.

   In his decision, the ALJ concluded that Figueroa's treatment was "essentially

routine and conservative in nature" because it "essentially consisted of routine examinations that

note[d] some positive clinical findings related to the lower extremities but [contained] no

recommendations for surgical intervention" and because Figueroa "d[id] not appear to have

undergone physical therapy or been prescribed narcotic pain medication."  (Tr. 28).  As Figueroa

correctly points out, however, the ALJ's conclusion with respect to, and his characterization of,

Figueroa's "routine and conservative" treatment was based on two factual inaccuracies.

First, Figueroa's course of treatment for her hip impairment did indeed contain a recommendation for surgical intervention.  On February 8, 2016, Figueroa presented to physician Christopher Cook ("Cook"), MD, at the hip clinic at Strong Memorial Hospital to follow up on her CT scan and MRI of her hip.  (Tr. 253).  Cook noted that Figueroa had "significant hip pain on the right side with a significant amount of inflammation in and around the hip."  (*Id.*).  Cook noted that the CT scan revealed a "significant amount of femoral condyle exostosis, and there [was] anteriorly and posteriorly calcification of the labrum extending the acetabulum distally over the femoral head[,] [as well as] [a] significant number of impingement points both anteriorly, laterally and posteriorly."  (*Id.*).  The MRI also revealed "some labral degeneration." (*Id.*).  Cook noted that he had a "very long discussion with [Figueroa] about the imaging and the potential fix for this."  (*Id.*).  Cook recommended a procedure for "a surgical hip dislocation with debridement and reshaping of the femoral head, trochanteric osteotomy and relative femoral neck lengthening along with trimming of the acetabular rim in addition to fixing any chondral issues and labral issues at the same time," which he agreed to "book . . . for sometime in the near future."  (Tr. 253-54).

The surgery was scheduled for July 12, 2016, and Figueroa attended several preoperative evaluations in anticipation of the procedure.  (*See*, *e.g.*, Tr. 385-91, 393-95, 429-31).  Figueroa, however, developed a pilonidal cyst, which caused the scheduled procedure to be postponed until the cyst could be treated and had healed, and the procedure was eventually cancelled.  (Tr. 432-33, 438, 453).  Although Figueroa had not yet undergone the procedure at the time of the hearing,[8] that does not change the fact that Cook had recommended and

---

[8]  Figueroa testified at her hearing that she was discussing with her current doctor, Brian Giordano ("Giordano"), MD, rescheduling the surgical procedure.  (Tr. 65-66).  Figueroa testified that Giordano wanted her to

scheduled Figueroa for surgery in 2016.  The ALJ's statement that Figueroa's treatment

consisted of "no recommendations for surgical intervention" is thus inaccurate.[9]

Second, and further contrary to the ALJ's recitation of the record, Figueroa did

undergo physical therapy for her hip pain.  The record demonstrates that Figueroa treated with

physical therapist Amy Pete on October 21, 2015 (Tr. 224-25), November 4, 2015 (Tr. 237-38),

and December 7, 2015 (Tr. 240-44), and with physical therapist Chad Condidorio on June 27,

2016 (Tr. 429-31).  Moreover, Figueroa testified at the administrative hearing that she

discontinued physical therapy because the providers told her it would not help her condition in

the absence of surgery.  (Tr. 69 ("[t]hey stopped me from physical therapy because they said it

wouldn't help, I would need the surgery")).  The ALJ was therefore clearly incorrect in stating

that Figueroa "also does not appear to have undergone physical therapy" (Tr. 28), which is

surprising in view of the ALJ's citation of physical therapist Amy Pete's treatment notes in an

earlier portion of his decision (*see* Tr. 20 (citing Tr. 225, 282)).

The ALJ's evaluation of Figueroa's subjective complaints, which was based, in

part, on the ALJ's view that Figueroa only underwent "routine and conservative" treatment, was

erroneously based on clear factual inaccuracies as set forth above.  *See Andrews v. Colvin*, 2013

WL 5878114, *12 (W.D.N.Y. 2013) ("[t]he ALJ's recitation of the facts contained in the

credibility assessment *must be accurate* and contain an explanation why they undermine the

credibility of the witness") (emphasis supplied) (citing *Horan v. Astrue*, 350 F. App'x 483, 485

---

be seen by the Bariatric Surgery Center prior to proceeding with her hip surgery.  (Tr. 65-66, 438-39).  She had an appointment scheduled at the Bariatric Surgery Center for September 2018.  (Tr. 65-66).

[9]  The Commissioner contends that the ALJ's statement is accurate because "plaintiff did not have orthopedic surgery during the relevant period."  (Docket # 11-1 at 14).  As explained above, however, the ALJ's statement that Figueroa underwent only "routine and conservative" treatment was based on his view that she was not even *recommend[ed]* for surgical intervention" – not that Figueroa did not undergo a surgical procedure.  (Tr. 28 (emphasis supplied)).

(2d Cir. 2009) (summary order) ("[b]ecause the ALJ's credibility determination was based largely on these factual errors, we cannot say that it is supported by substantial evidence")).  On this record, I find that the ALJ's assessment of Figueroa's subjective complaints is not supported by substantial evidence and that remand is necessary for the ALJ to reevaluate Figueroa's subjective complaints.

Finally, because I conclude that remand is appropriate on this basis, I am unable to meaningfully review the ALJ's RFC analysis, and I therefore decline to reach Figueroa's remaining contention regarding the ALJ's consideration of Toor's consultative opinion as it relates to the ALJ's RFC assessment.  *See Meadors v. Astrue*, 370 F. App'x 179, 185-86 (2d Cir. 2010) (summary order) ("[b]ecause we conclude that the ALJ erred in assessing [claimant's] credibility, thereby depriving us of the ability to subject his RFC determination to meaningful review, we do not reach [claimant's remaining contentions]"); *Spear v. Astrue*, 2014 WL 4924015, *20 (W.D.N.Y. 2014) ("[b]ecause [the court] conclude[s] that the ALJ's credibility assessment was the result of legal error, [it is] unable to subject the ALJ's physical RFC analysis to meaningful review, and [it does] not reach [plaintiff's] remaining contentions regarding the ALJ's physical RFC assessment or the vocational expert's testimony at step five").[10]

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 11**) is **DENIED**, and Figueroa's motion for judgment on the pleadings (**Docket # 9**) is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

---

[10]  On remand, if the ALJ determines that Toor's consultative opinion is still entitled to great weight, he should give further consideration to the effect, if any, of Toor's opined sitting limitation on Figueroa's ability to perform a full range of sedentary work.  (*See* Docket # 9-1 at 13-15).

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**


                                                    _s/Marian W. Payson_
                                                    MARIAN W. PAYSON
                                                    United States Magistrate Judge

Dated: Rochester, New York
        May 12, 2020

21